UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

William Fabian Peralta-Malla,

                    Petitioner,

            -against-

Markwayne Mullin, in his Official Capacity,
Secretary of the U.S. Department of Homeland
Security; Todd Blanche, in his Official Capacity,
Attorney General of the United States; Kenneth
Genalo, in his Official Capacity as New York
Field Office Director for Enforcement and
Removal Operations, U.S. Immigration and
Customs Enforcement; Sheriff Paul Arteta, in his
Official Capacity as the Sheriff of Orange
County, NY,

                    Respondents.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _5/14/2026_

26 Civ. 2903 (AT)

**<u>ORDER</u>**

ANALISA TORRES, District Judge:

Petitioner, William Fabian Peralta-Malla, an Ecuadorian citizen, petitions for a writ of habeas corpus under 28 U.S.C. § 2241, challenging the lawfulness of his detention by Immigration and Customs Enforcement ("ICE"). *See generally* Pet. (the "Petition"), ECF No. 1. Peralta-Malla contends that his Fifth Amendment right to due process was violated when he was detained on April 1, 2026, near his home in Elmsford, New York, while commuting to work. *See id.* ¶¶ 7, 18, 51–52.[1] Peralta-Malla seeks immediate release from custody or, alternatively, a bond hearing. *Id.* ¶ 2. For the reasons stated below, the Petition is GRANTED, and the Court rules that Peralta-Malla is entitled to a bond hearing within seven days of this order.[2]

---

[1] Peralta-Malla also claims that his detention violates the Immigration and Nationality Act, the Administrative Procedure Act, and the Suspension Clause. *See* Pet. ¶¶ 53–54. Because the Court decides the Petition on Fifth Amendment grounds, it does not evaluate the merits of Peralta-Malla's other arguments.

[2] Having reviewed the Petition and the government's opposition and accompanying exhibits, the Court finds that the Petition presents only issues of law and it may, therefore, be adjudicated without a hearing. *See* 28 U.S.C. § 2243 (commanding courts to dispose of habeas petitions expeditiously, "as law and justice require").

## BACKGROUND

Peralta-Malla is a 25-year-old Ecuadorian man who has resided continuously in Elmsford, New York, since his entry into the United States in 2019.  Pet. ¶¶ 5, 7, 15.  He is the father of two children, one of whom is a United States citizen.  *Id.* ¶ 7.  In 2019, Peralta-Malla unlawfully entered the United States through the southern border in Texas and encountered United States Customs and Border Protection ("CBP") officers.  *See* Rousseau Decl. ¶ 4, ECF No. 7.  In July 2019, the Department of Homeland Security ("DHS") issued Peralta-Malla a Notice to Appear ("NTA"), charging him as inadmissible.  *Id.* ¶ 9.  Peralta-Malla was subsequently released from ICE custody after posting a $12,000 bond.  *Id.* ¶ 10.  In January 2020, Peralta-Malla filed a Special Immigrant Juvenile Status ("SIJS") petition,[3] which was approved by the United States Citizenship and Immigration Services ("USCIS").  *Id.* ¶¶ 16–17.  In August 2023, on the joint motion of DHS and Peralta-Malla, an immigration judge dismissed Peralta-Malla's removal proceedings.  *Id.* ¶¶ 14–15.  In January 2026, Peralta-Malla applied for adjustment of status to lawful permanent residence, and his application remains pending before the USCIS.  *Id.* ¶ 18.

On August 11, 2025, Peralta-Malla was allegedly driving while intoxicated in Clarkstown, New York and struck another vehicle, killing a man.  *See* Opp. at 2, ECF No. 8; Rousseau Decl. ¶ 19; Police Accident Report, ECF No. 12-1; *but see* Reply II at 8 (noting that the police accident report states that no alcohol involvement was suspected).  On March 11, 2026, he was arrested by the New York State Police and arraigned on the following charges, which remain pending: Manslaughter in the Second Degree; Recklessly Causes Death in violation of New York Penal

---

[3] The SIJS "classification provides immigration relief for foreign-born children living in the United States who have been abused, neglected, abandoned, or similarly mistreated by a parent and for whom a state or administrative court has determined it would not be in their best interest to be returned to their home country or prior country of residence." *A.C.R. v. Noem*, 809 F. Supp. 3d 103, 110 (E.D.N.Y. 2025) (internal quotation marks and citation omitted); *see* 8 U.S.C. § 1101(a)(27)(J).  SIJS recipients are eligible for lawful permanent resident status once a visa becomes available.  *See id.* (citing 8 U.S.C. §§ 1153(b)(4), 1255(a)).

Law ("NYPL") § 125.15(1); Vehicular Manslaughter in the Second Degree in violation of NYPL § 125.12(1); Driving While Intoxicated—1st Offense and Operating a Motor Vehicle with 0.08 of 1% Alcohol or More in Blood—1st Offense in violation of New York Vehicle and Traffic Law ("VTL") § 1192; and Reckless Driving in violation of VTL § 1212.  *See* Opp. at 8; Record of Arrests and Prosecutions ("RAP") Sheet at 3, ECF No. 15-1; *see also* Gov't Ltr. II, ECF No. 15; RAP Sheet; Rousseau Decl. ¶ 19.

On March 11, the date of Peralta-Malla's state arrest, Rockland County Jail officers notified an ICE field office of the arrest, prompting ICE to investigate Peralta-Malla.  *See* Rousseau Decl. ¶ 20.  On April 1, 2026, ICE officers arrested Peralta-Malla near his home in Elmsford and served him with a Form I-200 warrant.  *Id.* ¶ 21; *see also* Warrant, ECF No. 9-4.  Peralta-Malla had been released from state custody at the time ICE arrested him.  *See* Pet. ¶¶ 15, 18 (stating that ICE arrested him near his home in Elmsford); Rousseau Decl. ¶ 21.  He was "transported to the ICE Newburg Sub-Office for processing" and then transferred to the Orange County Jail in Goshen, New York, where he remains detained pending removal.  *See* Rousseau Decl. ¶¶ 21, 25; Pet. ¶ 7.  That same day, ICE issued and personally served Peralta-Malla with a new NTA, charging him as (i) an individual present in the United States without being admitted or paroled and (ii) an immigrant who, at the time of application for admission, was not in possession of a valid unexpired immigrant visa or other entry document.  *See* 2026 NTA, ECF No. 9-5; Pet. ¶ 14; Opp. at 3–4.

## DISCUSSION

"Noncitizens are . . . entitled to challenge through habeas corpus the legality of their ongoing detention."  *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020) (quotation omitted).  "The Supreme Court has been unambiguous that executive detention orders, which occur

without the procedural protections required in courts of law, call for the most searching review." *Id.*

I. Basis of Detention

The government seeks to justify Peralta-Malla's detention under 8 U.S.C. §§ 1225(b)(2)(A) and 1226(c)(1)(E), which both provide for mandatory detention of certain noncitizens. *See* Gov't Ltr. I at 1, ECF No. 5.

A. Section 1225

Since Peralta-Malla filed his petition, the Second Circuit has held that § 1225(b)(2)(A) does not apply to noncitizens like him "who are present in the United States after entering the country without inspection and admission, and who were not apprehended while entering the country or shortly thereafter." *Cunha v. Freden*, No. 25-3141, 2026 WL 1146044, at *2 (2d Cir. Apr. 28, 2026). Therefore, Peralta-Malla's detention is governed by § 1226. *See id.*

B. Section 1226

The government argues that even if Peralta-Malla's detention is based on § 1226, he is subject to detention under § 1226(c)(1)(E), not § 1226(a), because he is inadmissible and "has been arrested and charged with a crime that resulted in death." Opp. at 8. The Court agrees.

"Section 1226 generally governs the process of arresting and detaining [noncitizens] pending their removal." *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018). Although § 1226(a) provides that the government "may" detain an individual pending removal, § 1226(c) requires that the government detain certain individuals. *See* § 1226(c) (stating that the government "shall take into custody"); *see also Cuy Comes v. DeLeon*, No. 25 Civ. 9283, 2025 WL 3206491, at *3–5 (S.D.N.Y. Nov. 14, 2025) (explaining the distinction).

4

Prior to January 2025, § 1226(c) applied only to those who had committed or been convicted of certain offenses. *See generally* § 1226(c)(1)(A)–(D). In January 2025, however, Congress passed the Laken Riley Act, which amended 8 U.S.C. § 1226(c) to add an additional category of individuals subject to mandatory detention under § 1226(c). *See* Laken Riley Act, Pub. L. No. 199-1, § 2(1)(C), 139 Stat. 3, 3 (2025). Specifically, § 1226(c)(1)(E) provides that the Attorney General "shall take into custody" an individual who: "(i) is inadmissible [under certain provisions in 8 U.S.C. § 1182(a)]; and (ii) is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person." In other words, the amendment "permits mandatory detention to turn not only on a conviction, but also, in some circumstances, on an arrest or charge alone." *Nosirov v. Rife*, 26 Civ. 1534, 2026 WL 916602, at *4 (E.D. Pa. Apr. 1, 2026).

Peralta-Malla does not dispute that he is inadmissible or that he was arrested and charged with vehicular manslaughter. *See generally* Reply I, ECF No. 6; Reply II. Rather, he argues that § 1226(c)(1)(E) is a post-hoc rationalization for Peralta-Malla's detention and that unproven, disputed conduct cannot form the basis of mandatory detention. *See* Reply II 10–11.

On this record, the Court holds that Peralta-Malla is subject to detention under 8 U.S.C. § 1226(c)(1)(E). First, Peralta-Malla does not dispute that he is inadmissible under § 1182(a)(6)(A), (6)(C), or (7).[4] *See* § 1226(c)(1)(E)(i); Reply I; Reply II. Second, Peralta-Malla's RAP sheet sufficiently demonstrates he "is charged with" a "crime that results in death or

---

[4] Peralta-Malla does not contend that his approved SIJS petition affects this determination, and the Court therefore does not consider that issue. *See* Pet. ¶ 15.

serious bodily injury," § 1226(c)(1)(E)(ii), and that his criminal proceedings remain unresolved, *see* RAP Sheet at 3.

    A.  Due Process

    The Court next addresses Peralta-Malla's argument that his ongoing detention violates the Due Process Clause. *See* Pet. ¶¶ 41–47; Reply II at 11. As the Supreme Court has unambiguously held, "the Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (citation omitted). Although there is no statutory obligation to provide a bond hearing under § 1226(c), the Supreme Court has left open the question of whether, in certain circumstances, constitutional due process may require a bond hearing or some other process for detention that is otherwise mandatory by statute. *See Black v. Decker*, 103 F.4th 133, 143–45 (2d Cir. 2024).

    "The Second Circuit has held that the *Mathews v. Eldridge*[, 424 U.S. 319 (1976),] balancing test applies when determining the adequacy of process in the context of civil immigration confinement." *Valdez v. Joyce*, No. 25 Civ. 4627, 2025 WL 1707737, at *3 (S.D.N.Y. June 18, 2025) (citing *Velasco Lopez*, 978 F.3d at 851). "The determination of what procedures are required under the Fifth Amendment requires consideration of: (1) the private interest that will be affected by the official action; (2) the risk of erroneous deprivation of that interest through the procedures used; and (3) the Government's interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail." *Id.* (citing *Mathews*, 424 U.S. at 335); *see Black*, 103 F.4th at 151.

    Several district courts have applied the *Mathews* factors to habeas petitions brought by those detained under the Laken Riley Act on the basis of unproven, disputed criminal allegations

and concluded that mandatory detention, without opportunity for a bond hearing, violated those petitioners' due process rights. *See, e.g.*, *Nosirov*, 2026 WL 916602, at *5–8; *C.R.R. v. Bondi*, No. 26 Civ. 1282, slip. op. at 9–15 (D. Minn. Feb. 23, 2026), *report and recommendation adopted with modification*, 2026 WL 752462 (D. Minn. Mar. 17, 2026); *Alcantara Guerrero v. Wesling*, No. 26 Civ. 10928, 2026 WL 931503, at *3–5 (D. Mass. Apr. 6, 2026); *Doe v. Moniz*, 800 F. Supp. 3d 203, 215–17 (D. Mass. 2025); *Sandoval Rodriguez v. Warden of the Cal. City Det. Facility*, 26 Civ. 2080, 2026 WL 970545, at *2–5 (E.D. Cal. Apr. 10, 2026), *report and recommendation adopted*, 2026 WL 1068774 (E.D. Cal. Apr. 20, 2026); *see also S.E. v. Noem*, No. 26 Civ. 356, 2026 WL 206085, at *2–4 (E.D. Cal. Jan. 27, 2026). The Court finds these decisions persuasive.

In each of these cases, the district court rejected the government's reliance on *Demore v. Kim*, 538 U.S. 510 (2003), which upheld the constitutionality of mandatory detention under the prior version of § 1226(c). *See, e.g.*, *Nosirov*, 2026 WL 916602, at *6; *Alcantara Guerrero*, 2026 WL 931503, at *4; *Doe*, 800 F. Supp. 3d at 215–16. "The premise of [*Demore*] was that detention attached to a class of noncitizens whose criminal culpability had already been established through ordinary criminal process, and the Court understood the detention to be relatively brief." *Nosirov*, 2026 WL 916602, at *6 (citing *Demore*, 538 U.S. at 518–21, 529–30); *see Demore*, 538 U.S. at 518 (relying on legislative findings regarding recidivism and flight risk of "criminal aliens"). Here, however, the government does not "rely on a conviction"—Peralta-Malla "has not been adjudged guilty of the offense on which [the government] rel[ies], no immigration judge has found him dangerous or likely to flee, and the [g]overnment seeks detention without bond solely because an accusation has been filed." *Nosirov*, 2026 WL 916602, at *6. As *Nosirov* explains, "[a] conviction follows adversarial proceedings and an adjudication of guilt; a charge does not. A person who has been merely charged remains entitled to contest every element of the

7

offense. . . . Extending *Demore* from convictions to unresolved accusations would expand the constitutional logic of mandatory detention beyond the setting the Supreme Court actually addressed." *Id.* Although the criminal charges here are serious, Peralta-Malla neither admits to nor has been convicted of any offense, nor has he received the "full procedural protections" of the criminal legal system to determine his guilt or innocence. *Demore*, 538 U.S. at 513, 525 n.9. Moreover, the Supreme Court in *Demore* "assumed that detention would be relatively brief," explaining that "proceedings against 'criminal aliens' are typically completed so swiftly because they are prioritized . . . over the mine run of removal cases." *Cunha*, 2026 WL 1146044, at *22 (quoting *Demore*, 538 U.S. at 530 n.13). Here, there has been no criminal conviction, and Peralta-Malla is subject to removal only on standard inadmissibility grounds. *See* 2026 NTA.

Nor does it appear that Congress, in enacting the Laken Riley Act, made specific legislative findings that those merely arrested or charged with certain crimes are, as a class, dangerous or likely to flee. *See Alcantara Guerrero*, 2026 WL 931503, at *4 ("[U]nlike the portion of [§ 1226(c)] considered in *Demore*, the Laken Riley Act does not contain comparable legislative findings to support the proposition that people arrested for or charged with—though not convicted of—any of the listed offenses pose a heightened danger to the community or a flight risk."); *Doe*, 800 F. Supp. 3d at 215–16; *see also Demore*, 538 U.S. at 518–19 (describing empirical legislative findings regarding the dangerousness and/or risk of flight of those with criminal convictions). The government argues, citing a House debate over an amendment added to the bill, that the Laken Riley Act was passed, at least in part, because an undocumented immigrant fled to Honduras after he was charged with driving drunk and killing a woman. *See* Gov't Ltr. III at 2–3, ECF No. 17. But this legislative history falls well short of making legislative findings regarding the categorical

danger or flight risk that such a class of individuals poses.  In all, *Demore* is materially distinguishable.

Applying the *Mathews* factors to a petitioner's detention, the district court in *Nosirov* also held that a bond hearing was required to justify his continued detention based on an "unresolved criminal accusation."  2026 WL 916602, at *7–8; *see also Alcantara Guerrero*, 2026 WL 931503, at *4–5; *Doe*, 800 F. Supp. 3d at 216–17.  Balancing the *Mathews* factors here, the Court holds that Peralta-Malla's continued detention without a bond hearing is unconstitutional, and accordingly, orders a bond hearing at which the government must demonstrate his dangerousness or risk of flight.  The Court does not decide whether a bond hearing was required at the time of initial detention, as it clear that at a bond hearing is required now.

First, "the private interest affected by the official action is the most significant liberty interest there is—the interest in being free from imprisonment." *Velasco Lopez*, 978 F.3d at 851. Peralta-Malla has been detained for over one month. *See* Pet. ¶ 1. "Freedom from imprisonment— from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690.[5]

The second factor supports Peralta-Malla as well.  "Civil immigration detention must be 'nonpunitive in purpose' and bear a 'reasonable relation' to the authorized statutory purposes of preventing flight and danger to the community." *Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274, 317 (E.D.N.Y. 2025) (quoting *Zadvydas*, 533 U.S. at 690); *see also Sandoval Rodriguez*, 2026 WL 970545, at *5.  "[T]he almost nonexistent procedural protections in place for [§] 1226(c)

---

[5] The Court is also concerned that ICE detention without the possibility of seeking release could impair an accused person's ability to defend themselves in underlying criminal proceedings by, for example, preventing them from attending court proceedings in person or discussing their case with counsel.  Courts have recognized that the government "often repeatedly moves ICE detainees to remote locations far from their counsel or their community without informing counsel of the transfer." *Anariba v. Dir. Hudson Cnty. Corr. Ctr.*, 17 F.4th 434, 448 (3d Cir. 2021) (internal quotation marks omitted); *accord Khalil v. Joyce*, 771 F. Supp. 3d 268, 284 (S.D.N.Y. 2025).

detainees markedly increase[s] the risk of deprivation of [Peralta-Malla's] private liberty interests." *Black*, 103 F.4th at 152. Peralta-Malla was afforded essentially no process before or after he was detained. *See generally* Pet. (stating that Peralta-Malla was not notified of the basis of his detention or given an opportunity to be heard); Opp. (arguing that he is owed no process at any point in time because his detention is mandatory under § 1226(c)(1)(E)); Gov't Ltr. III (same); *see also Black*, 103 F.4th at 152 (explaining that, unlike under § 1226(a), the procedures used for § 1226(c) detainees are "very few" and include "no mechanism for a detainee's release, nor for individualized review of the need for detention").

"The risk of erroneous deprivation is high because [Peralta-Malla] is being detained based solely on an arrest and charge for which he is presumed innocent." *Alcantara Guerrero*, 2026 WL 931503, at *5. Unlike the detainees at issue in *Demore*, Peralta-Malla has not received procedural protections to adjudicate his guilt or innocence. Applying § 1226(c)(1)(E) as the government argues would mean that "liberty is withdrawn at the accusation stage, automatically, and without any individualized determination that detention is necessary." *Nosirov*, 2026 WL 916602, at *6 n.3. Therefore, "it appears to [the Court] that almost *any* procedural safeguards . . . would add value. The most obvious of these . . . would be an individualized bond hearing at which [a neutral decisionmaker] can consider the noncitizen's dangerousness and risk of flight." *Black*, 103 F.4th at 153 (emphasis in original); *see Nosirov*, 2026 WL 916602, at *7 ("The value of additional process is equally clear: a prompt bond hearing would permit a neutral decisionmaker to determine whether continued detention is actually necessary to address danger or flight risk.").

The government emphasizes the severity of Peralta-Malla's charges, and describes certain facts that, in its opinion, make it more likely that Peralta-Malla, in fact, committed the charged offenses. *See* Gov't Ltr. III at 5. The Court does not question the seriousness of the charges;

however, charges alone do not demonstrate that a bond hearing would not add value. After all, Peralta-Malla was released by the judge who arraigned him on these charges, and because he has a child who is a United States citizen, a pending application for adjustment of status to a lawful permanent resident, and a history of compliance with ICE conditions of release, there are relevant circumstances weighing against his risk of flight. *See* Pet. ¶ 5; Rousseau Decl. ¶ 19. If there is an adequate justification for detention, the government can make those arguments at a bond hearing.[6]

Finally, the third *Mathews* factor, the government interest, also favors Peralta-Malla. The government no doubt has an interest in enforcing immigration laws and protecting public safety. *See* Gov't Ltr. III at 5. But the Court fails to see how the government's interests are impaired by affording Peralta-Malla a bond hearing, which would evaluate whether the deprivation of his liberty is justified by a risk of flight or danger to the community. Nothing in the record suggests that granting a bond hearing will "undermine [ICE's] effective enforcement of immigration laws." *Sajous v. Decker*, 18 Civ. 2447, 2018 WL 2357266, at *13 (S.D.N.Y. May 23, 2018); *see Sandoval Rodriguez*, 2026 WL 970545, at *5 ("Detention hearings in immigration courts are routine, and impose a 'minimal cost.'" (citation omitted)). And, as the Second Circuit has recognized, "retaining and housing detainees imposes substantial costs as well." *Black*, 103 F.4th at 154; *see Velasco Lopez*, 978 F.3d at 854 n.11 (noting that detention costs approximately $134 per person, per day, according to ICE's estimates); *see also Hernandez-Lara v. Lyons*, 10 F.4th 19, 33 (1st Cir. 2021); *Hernandez v. Sessions*, 872 F.3d 976, 996 (9th Cir. 2017) ("The costs to the public of immigration detention are 'staggering': $158 each day per detainee."). The Court further notes that this case does not implicate an interest in the prompt execution of removal orders—the case

---

[6] Although Peralta-Malla's removal proceedings are moving forward, *see* Gov't Ltr. III at 1 n.2, 5, the Court cannot conclude that his detention will be brief or limited. He has been detained for over one month, *see* Pet. ¶ 1, and the length of future detention is unknown where his removal is not based on a criminal conviction, no order of removal has issued, and relief from removal and further judicial review may be available, *see id.* ¶¶ 5, 19, 61.

11

arises under § 1226(c), before a final order of removal has been issued. *See Velasco Lopez*, 978 F.3d at 853 n.10. The Court, therefore, concludes that the government interest "is not well served where, as here, a noncitizen is detained without a bond hearing—and thus an opportunity for an immigration judge to determine whether he poses a danger to the community or a flight risk— simply because he was arrested for, and charged with, an offense under § 1226(c)." *Alcantara Guerrero*, 2026 WL 931503, at *5.

In sum, balancing the *Mathews* factors, the Court holds that Peralta-Malla, who is detained solely because of disputed, unresolved criminal charges, who was never determined to be dangerous or a flight risk, and whose length of future detention is unknown, is entitled to a bond hearing under the Due Process Clause. The Court need not, and does not, decide whether the Laken Riley Act is unconstitutional in every application. As applied here, however, the government seeks mandatory detention without bond based solely on a pending state charge, and without having made an initial determination that Peralta-Malla is dangerous or presents a flight risk. Accordingly, the Court holds that even if Peralta-Malla's detention is governed by § 1226(c)(1)(E), his continued detention without a bond hearing is unconstitutional.

As a remedy, the Court orders that the government provide Peralta-Malla with a bond hearing and that the bond hearing comply with the standard set forth in *Black v. Decker*, 103 F.4th at 155–57, requiring the government to justify Peralta-Malla's dangerousness or risk of flight by clear and convincing evidence. In addition, the immigration judge must consider Peralta-Malla's "ability to pay and alternatives to detention when setting any bond amount." *Black*, 103 F.4th at 158; *see id.* at 157–159; *see also Hernandez*, 872 F.3d at 991 ("A bond determination process that does not include consideration of financial circumstances and alternative release conditions is

unlikely to result in a bond amount that is reasonably related to the government's legitimate interests.").[7]

**CONCLUSION**

For the reasons stated above, the Petition, ECF No. 1, is GRANTED.  The government is ordered to hold a bond hearing before an immigration judge in accordance with this decision by **May 21, 2026,** or release Peralta-Malla on his own recognizance.  At that hearing, the government shall bear the burden of demonstrating by clear and convincing evidence that Peralta-Malla is either a danger to the community or a risk of flight, and the immigration judge must consider his ability to pay for a bond and the alternatives to detention for assuring his appearance.

By **May 22, 2026,** the government shall file a letter certifying its compliance with this order by (i) confirming that the bond hearing was held and that the immigration judge applied the proper legal standard and (ii) stating the outcome of the bond hearing.

SO ORDERED.

Dated: May 14, 2026
       New York, New York

_____
ANALISA TORRES
United States District Judge

---

[7] The Court holds that this standard is appropriate under the circumstances present here.  The government has now detained Peralta-Malla—who is accused but not convicted of a criminal offense, who was released from custody pending his state proceedings, and who has ties to his family in New York—for over one month, without having made an individualized custody determination, provided him with an initial hearing, or afforded him a future opportunity to challenge his detention.  Balancing the *Mathews* factors, the Court concludes that the legal standard set forth in *Black* is appropriate for the bond hearing ordered.  The Court does not decide whether a bond hearing, rather than immediate release, is always the appropriate remedy where a person's detention is based solely on unresolved arrests or charges.  Nor does the Court decide that the legal standard stated here applies whenever a bond hearing is ordered as a remedy for unconstitutional detention.  The Court concludes, however, that on this record and for the reasons stated in *Black*, 103 F.4th at 155–57, this remedy is appropriate here.